UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

CASE NO.:

MICKEYTRAVELS, LLC,

      Plaintiff,

vs.

KELSEY CAPPS, individually, CHERYL
NICKLAS, individually, CAITLYN STOYKA,
individually, GLENN STOYKA, individually,
and MAGIC TRAVEL MAKERS, an
unincorporated business,

Defendants.

_____/

# COMPLAINT

      Plaintiff, MickeyTravels, LLC ("MickeyTravels"), sues Defendants Kelsey Capps ("Capps"), Cheryl Nicklas ("Nicklas"), Caitlyn Stoyka ("Stoyka"), Glenn Stoyka ("G. Stoyka") and Magic Travel Makers ("MTM"), an unincorporated travel agency business (collectively "Defendants"), and states:

## INTRODUCTION

      1.    MickeyTravels brings this action for injunctive relief and damages to remedy a conspiracy among the Defendants to misappropriate MickeyTravels' trade secrets and other confidential and proprietary business information belonging to MickeyTravels, to solicit and divert clients from MickeyTravels, and to enforce contractual promises made and breached by Capps and Stoyka. As detailed below, MickeyTravels seeks relief pursuant to: (1) the written agreements entered into by Capps and Stoyka, (2) Florida's Unfair and Trade Practices Act ("FDUTPA"), (3) civil conspiracy, (4) the Defend Trade Secrets Act ("DTSA"), (5) Florida's Uniform Trade Secrets Act ("FUTSA") and (6) tortious interference with business relationships.

1

2.     MickeyTravels is a nationally recognized leader in the Disney travel industry and an elite Authorized Disney Vacation Planner, offering free vacation planning services for all Disney destinations throughout the world. In 2015, MickeyTravels earned the highly coveted status of Platinum Earmarked within Disney's Earmarked program, which was the highest status that could be attained at that time and only a few travel agencies in the world have achieved. A substantial part of MickeyTravels' business involves educating and training its independent contractors in selling Disney vacations and allowing them access to preferred rates, training, content shared with agents, selling methods and techniques, and customer information, which includes lead generation that stems from long-term relationships between MickeyTravels and its clients and substantial effort and expense that MickeyTravels made in rising to the level of a Disney elite platinum travel agency and in obtaining new client leads.

3.     While working for MickeyTravels, Capps and Stoyka coordinated with each other to engage in a conspiracy with Nicklas, G. Stoyka and MTM to divert business from MickeyTravels to their newly formed travel agency, MTM, with which Capps, Nicklas, Stoyka, and G. Stoyka are all associated. While MTM's website claims Nicklas is the "owner," that is simply subterfuge used by Defendants to conceal that it is actually Stoyka and Capps who are operating MTM.  Capps and Stoyka improperly used their access to MickeyTravels' database, training materials, and sales strategies to misappropriate MickeyTravels' trade secrets and other confidential and proprietary business information and used MickeyTravels' platinum status to obtain leads and then divert bookings from MickeyTravels to MTM while still under contract with MickeyTravels for their own profit and gain thereby causing irreparable harm to MickeyTravels.

**JURISDICTION, PARTIES, AND VENUE**

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

4.      This is an action for injunctive relief and damages. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this dispute is between citizens of different states. Complete diversity exists between Plaintiff and Defendants. Further, the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

5.      This Court also has original subject-matter jurisdiction over the claim asserted in Count IX pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c). The Court has supplemental jurisdiction over the related claims asserted in Counts I-VIII and X-XI of this action pursuant to 28 U.S.C. § 1367(c).

6.      MickeyTravels is a Florida Limited Liability Company qualified to do business in the State of Florida. MickeyTravels has been in continuous business operation since January 2011, and specifically has been in business operation in the Orlando, Florida area since March 2020.

7.      Based upon information and belief, Stoyka is an adult citizen and resident of the State of Alabama and is domiciled at 8629 Collie Court, Semmes, Alabama 36575. Accordingly, personal jurisdiction is properly exercised over Stoyka in this action, and she is otherwise sui juris.

8.      Based upon information and belief, Capps is an adult citizen and resident of the State of Texas and is domiciled at 1034 Rio Grande Way, Weatherford, Texas 76087. Accordingly, personal jurisdiction is properly exercised over Capps in this action, and she is otherwise sui juris.

9.      Based upon information and belief, G. Stoyka is an adult citizen and resident of the State of Alabama and is domiciled at 8629 Collie Court, Semmes, Alabama 36575. Accordingly, personal jurisdiction is properly exercised over G. Stoyka in this action, and he is otherwise sui juris.

10.     Based upon information and belief, Nicklas is an adult citizen and resident of the State of Texas and is domiciled at 135 Southwards Drive, Weatherford, Texas 76087. Accordingly,

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

personal jurisdiction is properly exercised over Nicklas in this action, and she is otherwise sui juris.

11. Defendant MTM is an unincorporated business in Texas and purportedly operated by Nicklas, Capps' mother, but the ownership is believe to be a subterfuge and workaround a non-compete clause in Stoyka's and Capp's Contracts. MTM regularly conducts business in and around the Orlando, Florida area because its website reveals that it is a Disney only travel agency and Capps and G. Stoyka are affiliated with MTM, and they regularly visit this District to conduct business through MTM and its corresponding website, https://www.magictravelmakers.com. As described more fully below, all the Defendants are conducting business in breach of the contracts between Capps, Stoyka and MickeyTravels and in violation of the law.

12. Venue is proper in the United States District Court for the Middle District of Florida in this action because Capps and Stoyka submitted to the jurisdiction of this Court by executing agreements with MickeyTravels providing that all disputes shall be litigated in Florida state or federal courts only. Venue is also proper as to the other Defendants under 28 U.S.C. § 1391(b)(2), in that the events giving rise to the claims in this action occurred in this District.

## FACTUAL BACKGROUND

13. As discussed in paragraph 2 above, MickeyTravels is a highly successful travel agency specializing in, and exclusively booking Disney vacations. The success in the company stems from eleven (11) years of hard work on the part of the owners, including building the business from nothing at their own expense into one of the most successful travel agencies in the country. It is common industry practice for travel agencies, both large and small, to hire independent contractors who are responsible for procuring their own licenses to book travel for clients in the state in which they operate. These independent contractors then associate with

MickeyTravels to use MickeyTravels' platinum status to book travel to earn commissions. MickeyTravels offers them its reputation in the travel industry, sales training, education on Disney properties to aid them in selling Disney vacations and provides other tools and benefits.

14.     Due to the COVID-19 pandemic, Stoyka and Capps wanted to change careers. Prior to contacting MickeyTravels, Capps had been a third and fourth grade schoolteacher with no prior travel industry experience. *See* Capps' Resume attached hereto as **Exhibit 1**.  Prior to contacting MickeyTravels, Stoyka was working for a company called Standard Furniture Manufacturing, which specializes in selling furniture and likewise had no prior travel industry experience. *See* Stoyka's LinkedIn Page attached hereto as **Exhibit 2**.

15.     Capps contacted MickeyTravels in December 2019 and entered a Contract, Confidentiality and Non-Disclosure Agreement with MickeyTravels on April 26, 2020 (the "Capps Contract").  *See* contract attached hereto as **Exhibit 3.**

16.     Stoyka initially approached MickeyTravels in 2019, but MickeyTravels did not respond at that time. Stoyka re-applied in 2021, at which time Stoyka entered an identical Contract, Confidentiality and Non-Disclosure Agreement (the "Stoyka Contract") with MickeyTravels on January 24, 2021.  *See* contract attached hereto as **Exhibit 4.**

17.     Despite their complete lack of experience and expertise, MickeyTravels entered into these agreements with Capps and Stoyka, trained and educated them on MickeyTravels' manner and method of servicing clients and how to attract new clients and generate leads and extensively trained them on how to effectively sell Disney vacations through the expertise acquired by MickeyTravels and its elite status as a platinum level, exclusively Disney travel agency.

18.     Capps and Stoyka were hired as independent travel agents for the purpose of providing travel-related services and accommodations to individuals and groups. To obtain

commissions for bookings, they were given access to MickeyTravels' proprietary training, proprietary client development tools, and were provided leads for bookings.

19.     At the time Capps and Stoyka affiliated with MickeyTravels, the COVID-19 pandemic was in the process of, or already had, decimated the travel industry. Yet despite the pandemic, MickeyTravels upheld their contracts and continued to operate, train, manage and provide leads to Capps and Stoyka.

20.     For booking travel, MickeyTravels provides its independent travel agents, including Capps and Stoyka, access to valuable, confidential MickeyTravels' business information, including information constituting trade secrets under federal and Florida law, and they have access to substantial relationships between MickeyTravels'and Disney contacts and leads for prospective clients. That information includes the identity of individual clients, key contacts at Disney, the specific manner and method of selling to clients, commission rates, and leads that MickeyTravels developed at its expense and shared with Capps and Stoyka.

21.     Any competitor(s) of MickeyTravels who obtain improper access to its trade secrets and confidential business information relating to MickeyTravels' clients thereby gains an unfair competitive advantage over MickeyTravels in the market in which MickeyTravels and the competitor both operate.

22.     On December 7, 2021, unbeknownst to MickeyTravels and in direct contravention of the Capps Contract, Capps sent an email from hello@magictravelmakers.com to a client, Jackie South, which stated:

> **This is Kelsey [Capps] emailing you from my new email address, I am quietly in the process of changing companies so I wanted to carry our conversation over here.**

*See* email to Jackie South dated 2/7/21 at 2:03 pm, attached hereto as **Exhibit 5**, at p. 4 (emphasis added).

23.     Shortly thereafter on December 15, 2021, all independent travel agents at MickeyTravels received a notice that an outside party, "Glenn@magictravelmakers.com," tried to log into MickeyTravels' private Google Drive to access MickeyTravels' confidential and proprietary information. *See* Notification of Login Attempt attached hereto as **Exhibit 6**.

24.     Knowing that Glenn is Stoyka's husband, the proprietors of MickeyTravels questioned Stoyka about the incident and Stoyka claimed that her husband G. Stoyka "accidentally" tried to access MickeyTravels private, confidential, and proprietary Google Drive because he was approached by Nicklas to become a travel agent for MTM. MickeyTravels' owners found that statement to be peculiar and asked why she did not refer him to MickeyTravels to which Stoyka advised that he was "not good enough." An hour later, Stoyka called the proprietors of MickeyTravels and resigned.

25.     Shortly thereafter, the proprietors of MickeyTravels looked up MTM's website and uncovered that MTM's website's "Services Page" was a nearly verbatim copy of MickeyTravels' website's "About Page." *See* screenshots of MickeyTravels' and MTM's websites attached as composite **Exhibit 7.** The proprietors of MickeyTravels mentioned this to Stoyka and asked her who owned MTM. Stoyka advised that the owner was Nicklas. At the time, the proprietors of MickeyTravels did not know who Nicklas was so MickeyTravels asked Stoyka for Nicklas's contact information and Stoyka stated that, ""Cheryl Nicklas said you all can email her at hello@magictravelmakers.com. All those emails go directly to her and she'll be on the lookout. I've also shared your email address with her so that she could watch for it." *See* email from Stoyka dated December 19, 2021 attached hereto as **Exhibit 8.**

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

26.     While MTM eventually removed the improper appropriation of MickeyTravels' trade dress from its "Services Page," the conspiracy and intention to clone MickeyTravels' business model, divert clients and misappropriate MickeyTravels' proprietary trade secrets was abundantly clear.

27.     Not long after that incident, Capps resigned on December 31, 2021, advising the owners that she wanted to "pursue other adventures at this time." *See* Capps' Resignation Email attached hereto as **Exhibit 9**.

28.     When an agent resigns, it is MickeyTravels' practice and procedure for the owners to forward the resigned agents' email correspondence to the owners to ensure that MickeyTravels' clients receive all services that they booked. On February 4, 2022, the owners received an email to Capps' deactivated account, "Kelsey@mickeytravels.com," from a client, Jackie South, concerning the booking referenced in paragraph 22 above. The email address Capps used in the email chain ("hello@magictravelmakers.com") was identical to the domain name ("magictravelmakers.com") that Stoyka claimed her husband "inadvertently" used to access MickeyTravels' Google Drive.  Moreover, it was, in fact, the same email address that Stoyka had previously advised MickeyTravels belonged to MTM's owner, Nicklas, but in that email Capps advised it was her new email address that she was using to divert business from MickeyTravels while still under contract. After receiving the February 4, 2022, email, MickeyTravels began investigating and uncovering the Defendants' subterfuge, conspiracy, and scheme to divest MickeyTravels of proprietary information, bookings, and clients in breach of Capps and Stoyka's Contracts with MickeyTravels and in violation of the law.

29.     During the investigation, MickeyTravels viewed MTM's Website, which is the website associated with the domain name email address that G. Stoyka and Capps used to access

MickeyTravels proprietary information and divert bookings, which purports to be a family-owned travel agency specializing in "ONLY Disney destinations." *See* screenshot of landing page attached as **Exhibit 10** at p. 5.   The "About Page" indicates that MTM is conveniently founded and owned by Capps' mother Nicklas "out of a love for all things travel. She has been heavily involved in the travel industry for many years and combined that knowledge with her passion for Disney." *Id*. Nicklas is Capps' mother and, on information and belief, a figurehead only for Capps' and Stoyka's scheme to divest MickeyTravels of bookings and other proprietary information while under contract with MickeyTravels for their own financial profit and gain and to the detriment of MickeyTravels.

30.     MickeyTravels' investigation revealed that the MTM website was purchased on or about July 21, 2021, and there is no corporate information for MTM in Texas, Alabama, Delaware, or Florida. *See* Domain Name Search attached hereto as **Exhibit 11**. Except for Nicklas, the owners of MTM and the Defendants affiliated with it, concealed their identities such that ownership information cannot be determined without serving discovery on Defendants Capps, Stoyka, G. Stoyka and Nicklas.  But there is no doubt that Capp's mother, Nicklas, is the person listed on the website as the purported "owner" and "founder" and that at least G. Stoyka and Capps are both identified as travel agents for MTM and, on information and belief, Stoyka is certainly among those associated with MTM in furtherance of the conspiracy. *See* **Ex. 10.**

31.     Also unbeknownst to MickeyTravels, Stoyka also improperly obtained $100.00 from a MickeyTravels' client for her own personal benefit. *See* Email between Stoyka and MickeyTravels' Client charging $100 service charge attached hereto as **Exhibit 12**. Specifically, Stoyka charged at least one client a $100.00 fee with the payment to go to her personal PayPal account. However, MickeyTravels is a 100% gratis travel agency and *never* charges clients any

fees. At no time was Stoyka authorized to solicit funds from a client for a planning or service fee. *Id.* This illegal attempted theft of funds from MickeyTravels' client was discovered when the client contacted MickeyTravels about the fee after Stoyka terminated her contract. *Id.* It is unclear how many clients Stoyka charged a planning or service fee and how much money she converted from clients and embezzled from MickeyTravels in the process. This has damaged MickeyTravels' reputation and business since Stoyka carried out this illegal scheme while under contract with MickeyTravels and has subjected MickeyTravels to potential liability, harm, and damage to its reputation.

32.     Additionally, after Capps resigned, MickeyTravels received six (6) emails from MouseDining, a company providing Disney dining reservation alerts, to Capps' MickeyTravels' deactivated email account for clients that Capps did not book through MickeyTravels, but, instead, on information and belief, Capps booked those clients through MTM while still affiliated with MickeyTravels in breach of her contract. *See* MouseDining Notification Emails attached hereto as **Exhibit 13.**

33.     From at least July 2021, Stoyka and Capps engaged in a conspiracy with the other Defendants to divert bookings and revenue from MickeyTravels for their own profit and benefit and at the expense of MickeyTravels.

34.     Both Stoyka and Capps willfully, intentionally and purposefully entered into contracts with MickeyTravels and after receiving the benefit of highly proprietary training and development, sales methods, marketing content, preferred rates and leads, Stoyka and Capps used their affiliation with an elite, platinum Disney travel agency to book travel through MTM and, at least Stoyka, pilfered unauthorized funds from MickeyTravels' clients without permission and without providing such funds to MickeyTravels, which constitutes theft and/or embezzlement.

Both Stoyka and Capps used MickeyTravels' platinum status to build, develop and carry out their new venture with MTM.

35.     Capps and Stoyka knowingly, intentionally, and willfully breached their agreements with MickeyTravels together with the other Defendants who engaged in a conspiracy of deceit to improperly access MickeyTravels' Google Drive and other proprietary and confidential trade secret information and to improperly access leads and divert business from MickeyTravels to MTM.  Capps and Stoyka engaged in this deceptive conduct while still working for MickeyTravels, all of which directly violated the non-compete, non-solicitation, and other applicable provisions in their contracts with MickeyTravels.

36.     Stoyka, G. Stoyka, Capps, Nicklas, and MTM engaged in concert and cooperation with each other to undertake to divert information, business, and clients from MickeyTravels to MTM for their own profit and gain. Stoyka and Capps, using access provided solely by virtue of their affiliation with MickeyTravels and during that affiliation, acquired confidential and proprietary information regarding MickeyTravels' business and clients, including sales methods on how to effectively market and sell Disney vacations, identities of existing and prospective clients, specific relationships in place with those clients and Disney contacts, specific financial details and related business terms. Defendants were, and still are, using this information to continue to divert business from MickeyTravels to MTM.

37.     The business information improperly accessed, obtained, and retained by Defendants is proprietary and confidential to MickeyTravels. MickeyTravels derives actual and potential economic value from the information and from the fact that it is not generally known to or ascertainable by proper means by competitors of MickeyTravels, including Defendants. MickeyTravels protects the secrecy of this information, including by safeguarding and restricting

its access and through use of contractual restrictions, passwords and logins, and limiting disclosure and use of such information.

38.     Defendants were and still are using this client and business information of MickeyTravels to target, solicit and improperly interfere with the business relationships between MickeyTravels and its clients. MickeyTravels' clients have been improperly diverted from MickeyTravels to MTM using the improperly obtained information, including that specified above.

39.     Further, in flagrant breach of the Stoyka Contract and Capps Contract, both Stoyka and Capps are brazenly marketing themselves as exclusively Disney vacation planners and agents on TikTok[1] and selling Disney vacations despite the contractual prohibition to which they agreed that they would not engage in any ownership interest in any entity that sells travel for six (6) months after termination and would not solicit or engage in sales for travel bookings on MickeyTravels accounts for twelve (12) months after termination. *See* **Ex. 3** and **Ex. 4** at ¶¶ 8 and 22.

## COUNT I

### BREACH OF CONTRACT
### (AS TO STOYKA)

40.     MickeyTravels realleges and incorporates by reference the allegations in Paragraphs 1 through 39 above as if fully set forth herein.

41.     On January 24, 2021, Stoyka entered into the Stoyka Contract with MickeyTravels for the contractual term of January 24, 2021 through January 23, 2022. *See* **Ex. 4**.

---

[1] *See* (Capps' TikTok account) https://www.tiktok.com/@kelsey_disneyplanner? and (Stoyka TikTok account) https://www.tiktok.com/@travelwithcaitlyn?lang=en.

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

42.     The Stoyka Contract defines "Confidential Information" in detail which includes, "customer information, customer lists, client information, client lists," and defines "Trade Secrets" in detail which includes, "client service methods," "techniques," and "lists of actual or potential customers or suppliers," and Stoyka agreed "not to use the Confidential Information in any way except for the purpose authorized by MickeyTravels." *See* **Ex. 4** at ¶ 17.

43.     The Stoyka Contract also contains a non-solicitation provision, which provides that during the term of the contract and for a period of twelve (12) months following the termination of the contract, Stoyka is prohibited from soliciting or engaging in any other sales activity for travel bookings to MickeyTravels' accounts that she serviced during the term of the Stoyka Contract. *See* **Ex. 4** at ¶ 8. Further, the non-solicitation provision in Section 14 provides that she will not "solicit any clients of MickeyTravels to conduct business with another travel agency…." *See* **Ex. 4** at ¶ 14.

44.     Section 20 of the Stoyka Contract also provides that Stoyka "will not act…in a manner that may…direct any business away from…MickeyTravels or any number of its affiliates." *See* **Ex. 4** at ¶ 20.

45.     The Stoyka Contract further states that:

Independent Contractor may be engaged or employed in any other business, trade, profession or other activity which does not place him/her in a conflict of interest with MickeyTravels; provided, that, during the Term, Independent Contractor shall not be engaged in any business activities that do or may compete with the business of MickeyTravels or perform any services for any direct competitors of MickeyTravels without MickeyTravels' prior written consent, to be given or withheld in its sole discretion.

*See* **Ex. 4** at ¶ 16.

46.     Additionally, the Stoyka Contract prohibits her from owning or having "any ownership in any entity that directly or indirectly engages in any travel business within their county

of residence that is competitive with MickeyTravels" for a period of six (6) months after termination of the contract. *See* **Ex. 4** at ¶ 22.

47.     Yet despite Stoyka executing the agreement and acquiescing to all of the above stated provisions, Stoyka's husband, G. Stoyka, attempted to improperly access MickeyTravels' Google Drive by and through the access that Stoyka was provided by virtue of her contract with MickeyTravels, and, based upon information and belief, Stoyka herself was also accessing MickeyTravels' confidential and proprietary information for purposes of not only diverting clients from MickeyTravels, in disruption of MickeyTravels' business activities, but also to directly participate in the formation and ownership of an entity, MTM, that directly competes with MickeyTravels whose formation is based on the proprietary trade secret information, knowledge and training Stoyka received form MickeyTravels in direct violation of her agreement. On information and belief, Stoyka either acted alone, under the guise of her husband's name, or she was and still is acting in concert with G. Stoyka in breach of the Stoyka Contract.

48.     Stoyka's conduct constitutes a breach of paragraphs 8, 14, 16, 17, 20, and 22 of the Stoyka Agreement and has directly and proximately caused actual loss to MickeyTravels and threatens further additional future loss to MickeyTravels if not enjoined by this Court, which is a direct and proximate result of Stoyka's misappropriation of MickeyTravels' trade secrets and confidential business information and diversion of business and clients from MickeyTravels to Defendants.

49.     Stoyka further agreed that "[i]n the event of a threatened or actual breach of this Agreement by [Stoyka], MickeyTravels reserves the right to obtain temporary and/or permanent injunctive relief and take all other necessary actions to protect its rights" and in event of an actual or threatened breach of the agreement, MickeyTravels "shall be entitled to recover all damages

incurred plus interest at current market rates as well as attorney's fees, costs and interest[] incurred by MickeyTravels." *See* **Ex. 4** at ¶ 23.

**WHEREFORE**, MickeyTravels respectfully requests that the Court:

(A)     order Stoyka to inventory and return all of MickeyTravels' information in her possession, custody or control to MickeyTravels;

(B)     pursuant to Florida Statute § 542.335(1)(j), enjoin and restrain Stoyka, her agents, servants, employees, co-conspirators, attorneys and all others in active concert or participation with her who receive actual notice thereof by personal service or otherwise, for a period of six (6) months from the date of the Court's Order, from having any ownership interest in a travel agency that competes with MickeyTravels and for a period of twelve (12) months from the date of the Court's order, from directly or indirectly soliciting, selling, managing, providing, accepting any request to provide, or inducing the termination, cancellation or otherwise interfering in MickeyTravels' business by the Stoyka Contract.

(C)     award damages to MickeyTravels for the actual losses caused by Stoyka's breaches of the Stoyka Contract; and

(D)     grant MickeyTravels such other and further relief as this Court deems just, necessary and proper.

<u>**COUNT II**</u>

**BREACH OF CONTRACT**
**(AS TO CAPPS)**

50.     MickeyTravels realleges and incorporates by reference the allegations in Paragraphs 1 through 39 above as if fully set forth herein.

51.     On April 26, 2020, Capps entered into the Capps Contract for the contractual term of April 26, 2020 through April 25, 2022. *See* **Ex. 3.**

15

52.     The Capps Contract defines "Confidential Information" in detail which includes, "customer information, customer lists, client information, client lists," and defines "Trade Secrets" in detail which includes, "client service methods," "techniques," and "lists of actual or potential customers or suppliers," and Capps agreed "not to use the Confidential Information in any way except for the purpose authorized by MickeyTravels." *See* **Ex. 3** at ¶ 17.

53.     The Capps Contract also contained a non-solicitation provision, which provided that during the term of the contract and for a period of twelve (12) months following the termination of the contract, Capps was prohibited from soliciting or engaging in any other sales activity for travel bookings to MickeyTravels' accounts that she serviced during the term of the Capps Contract. *See* **Ex. 3** at ¶ 8. Further, the non-solicitation provision in Section 14 provides that she will not "solicit any clients of MickeyTravels to conduct business with another travel agency…." *See* **Ex. 3** at ¶ 14.

54.     Section 20 of the Capps Contract also provides that Capps "will not act…in a manner that may…direct any business away from…MickeyTravels or any number of its affiliates." *See* **Ex. 3** at ¶ 20.

55.     The Capps Contract further states that:

Independent Contractor may be engaged or employed in any other business, trade, profession or other activity which does not place him/her in a conflict of interest with MickeyTravels; provided, that, during the Term, Independent Contractor shall not be engaged in any business activities that do or may compete with the business of MickeyTravels or perform any services for any direct competitors of MickeyTravels without MickeyTravels' prior written consent, to be given or withheld in its sole discretion.

*See* **Ex. 3** at ¶ 16.

56.     Additionally, the Capps Contract prohibits her from owning or having "any ownership in any entity that directly or indirectly engages in any travel business within their county

of residence that is competitive with MickeyTravels" for a period of six (6) months after termination of the contract. *See* **Ex. 3** at ¶ 22.

57.     Yet despite executing the Capps Contract and thereby acquiescing to the terms therein, Capps intentionally diverted one or more clients from MickeyTravels to MTM during the term of the Capps Contract as unequivocally evidenced by **Ex. 5**, which is in direct violation of her agreement with MickeyTravels. Additionally, Capps, acting in concert with one or more of the other Defendants, accessed MickeyTravels' Google Drive to not only divert clients from MickeyTravels and access MickeyTravels' confidential information, but also to directly benefit an entity, MTM, that she was and still is affiliated with which directly competes with MickeyTravels based on the proprietary trade secret information, knowledge, and training Capps received form MickeyTravels in direct violation of the agreement.

58.     Additionally, on information and belief, as of July 2021, MTM's website, purportedly owned and founded by Capps' mother, Nicklas, began advertising Capps as one of MTM's operative travel agents and based upon information and belief Capps has an actual ownership interest, if not an entire ownership interest that is being held out as her mother's ownership interest, in MTM even though the six (6) month non-compete clause was still in effect and had not yet expired. *See* **Ex. 10**.

59.     Capps' conduct constitutes a breach of paragraphs 8, 14, 16, 17, 20, and 22 of the Capps Contract and has directly and proximately caused actual loss to MickeyTravels and threatens further additional future loss to MickeyTravels if not enjoined by this Court, which is a direct and proximate result of Capp's misappropriation of MickeyTravels' trade secrets and confidential business information and diversion of business and clients from MickeyTravels to Defendants.

60.     Capps further agreed that "[i]n the event of a threatened or actual breach of this Agreement by [Capps], MickeyTravels reserves the right to obtain temporary and/or permanent injunctive relief and take all other necessary actions to protect its rights" and in event of an actual or threatened breach of the agreement, MickeyTravels "shall be entitled to recover all damages incurred plus interest at current market rates as well as attorney's fees, costs and interest[] incurred by MickeyTravels." *See* **Ex. 3** at ¶ 23.

**WHEREFORE**, MickeyTravels respectfully requests that the Court:

(A)     order Capps to inventory and return all of MickeyTravels' information in her possession, custody or control to MickeyTravels;

(B)     pursuant to Florida Statute § 542.335(1)(j), enjoin and restrain Capps, her agents, servants, employees, co-conspirators,  attorneys and all others in active concert or participation with her who receive actual notice thereof by personal service or otherwise, for a period of six (6) months from the date of the Court's Order, from having any ownership interest in a travel agency that competes with MickeyTravels and for a period of twelve (12) months from the date of the Court's order, from directly or indirectly soliciting, selling, managing, providing, accepting any request to provide, or inducing the termination, cancellation or otherwise  interfering in MickeyTravels' business by the Capps Contract.

(C)     award damages to MickeyTravels for the actual losses caused by Capps' breaches of the Capps Contract; and

(D)     grant MickeyTravels such other and further relief as this Court deems just, necessary and proper.

## COUNT III

## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

**(AS TO CAPPS)**

61.     MickeyTravels realleges and incorporates by reference the allegations in Paragraphs 1 through 39 above as if fully set forth herein.

62.     This is an action for damages pursuant to Chapter 501, Part II, Florida Statues ("FDUTPA").

63.     Capps engaged in and continues to engage in unfair methods of competition and unconscionable acts or practices with regards to MickeyTravels and its clients, including but not limited to:

(a)     Directly and improperly soliciting and diverting MickeyTravels' clients to MTM using MickeyTravels' confidential and proprietary business information, including but not limited to MickeyTravels' confidential customer list, training, sales, and marketing content;

(b)     Directly and improperly soliciting MickeyTravels' clients using MickeyTravels' status as a platinum agency and then diverting those bookings to MTM while still affiliated with MickeyTravels as unequivocally demonstrated by **Ex. 5;** and

(c)     Intentionally and willfully interfering with MickeyTravels' advantageous business relationships and contracts by improperly using MickeyTravels' confidential and proprietary business information to benefit MTM, a competing entity.

64.     As a result of Capps' violations of FDUTPA, MickeyTravels suffered and continues to suffer damages, including but not limited to lost clients, lost sales, lost business goodwill and reputation, and lost business opportunities.

    **WHEREFORE**, MickeyTravels respectfully requests that the Court:

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

(A)     order Capps to inventory and return all of MickeyTravels' information in her possession, custody or control to MickeyTravels;

(B)     pursuant to Fla. Stat. § 501.207(1)(b) enjoin and restrain Capps from continuing these unfair trade practices or acts which directly interfere with MickeyTravels' business;

(C)     award damages to MickeyTravels for the actual losses caused by Capps' unfair trade practices and acts; and

(D)     grant MickeyTravels such other and further relief as this Court deems just, necessary and proper.

## COUNT IV

### VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (AS TO STOYKA)

65.     MickeyTravels realleges and incorporates by reference the allegations in Paragraphs 1 through 39 above as if fully set forth herein.

66.     This is an action for damages pursuant to Chapter 501, Part II, Florida Statues ("FDUTPA").

67.     Stoyka engaged in and continues to engage in unfair methods of competition and unconscionable acts or practices with regards to MickeyTravels and its clients, including but not limited to:

(a)     Directly and improperly soliciting and diverting MickeyTravels' clients to MTM using MickeyTravels' confidential and proprietary business information, including but not limited to MickeyTravels' confidential customer list, training, sales, and marketing content;

(b)     Embezzling and converting funds from at least one MickeyTravels' client, and based upon information and belief many more MickeyTravels' clients, by charging the client a $100 service charge, to be paid directly to her personal PayPal account, while working for MickeyTravels even though MickeyTravels' is a 100% gratis free travel agency, and she was not authorized to do so, *see* **Ex. 12**; and

(c)     Intentionally and willfully interfering with MickeyTravels' advantageous business relationships and contracts by improperly using MickeyTravels' confidential and proprietary business information.

68.     As a result of Stoyka's violations of FDUTPA, MickeyTravels suffered and continues to suffer damages, including but not limited to lost clients, lost sales, lost business goodwill and reputation, and lost business opportunities.

**WHEREFORE**, MickeyTravels respectfully requests that the Court:

(A)     order Stoyka to inventory and return all of MickeyTravels' information in her possession, custody or control to MickeyTravels;

(B)     pursuant to Fla. Stat. § 501.211 enjoin and restrain Stoyka from continuing these unfair trade practices or acts which directly interfere with MickeyTravels' business;

(C)     award damages to MickeyTravels for the actual losses caused by Stoyka's unfair trade practices and acts;

(D)     grant MickeyTravels such other and further relief as this Court deems just, necessary and proper.

## COUNT V

### VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (AS TO G. STOYKA)

21

69.     MickeyTravels realleges and incorporates by reference the allegations in Paragraphs 1 through 39 above as if fully set forth herein.

70.     This is an action for damages pursuant to Chapter 501, Part II, Florida Statues ("FDUTPA").

71.     G. Stoyka engaged in and continues to engage in unfair methods of competition and unconscionable acts or practices with regards to MickeyTravels and its clients, including but not limited to:

(a)     Directly and improperly soliciting and diverting MickeyTravels' clients to MTM using MickeyTravels' confidential and proprietary business information, including but not limited to MickeyTravels' confidential customer list, training, sales, and marketing content; and

(b)     Intentionally and willfully interfering with MickeyTravels' advantageous business relationships and contracts by improperly using MickeyTravels' confidential and proprietary business information.

72.     As a result of G. Stoyka's violations of FDUTPA, MickeyTravels suffered and continues to suffer damages, including but not limited to lost clients, lost sales, lost business goodwill and reputation, and lost business opportunities.

**WHEREFORE**, MickeyTravels respectfully requests that the Court:

(A)     order G. Stoyka to inventory and return all of MickeyTravels' information in his possession, custody or control to MickeyTravels;

(B)     pursuant to Fla. Stat. § 501.211 enjoin and restrain G. Stoyka from continuing these unfair trade practices or acts which directly interfere with MickeyTravels' business;

(C)     award damages to MickeyTravels for the actual losses caused by G. Stoyka's unfair trade

practices and acts;

(D)     grant MickeyTravels such other and further relief as this Court deems just, necessary and

proper.

## COUNT VI

### VIOLATION OF FLORIDA'S DECEPTIVE AND
### UNFAIR TRADE PRACTICES ACT
### (AS TO NICKLAS)

73.     MickeyTravels realleges and incorporates by reference the allegations in

Paragraphs 1 through 39 above as if fully set forth herein.

74.     This is an action for damages pursuant to Chapter 501, Part II, Florida Statues

("FDUTPA").

75.     Nicklas engaged in and continues to engage in unfair methods of competition and

unconscionable acts or practices with regards to MickeyTravels and its clients, including but not

limited to:

(a)     Directly and improperly soliciting and diverting MickeyTravels' clients to MTM

using MickeyTravels' confidential and proprietary business information, including

but not limited to MickeyTravels' confidential customer list, training, sales, and

marketing content;

(b)     Forming a competitor travel agency, MTM, and holding herself out to be the

purported owner of MTM, even though the true owners are Capps and Stoyka, in

an effort to aid and abet Capps and Stoyka to breach their contracts with

MickeyTravels; and

(c)     Intentionally and willfully interfering with MickeyTravels' advantageous business relationships and contracts by improperly using MickeyTravels' confidential and proprietary business information.

76.     As a result of Nicklas's violations of FDUTPA, MickeyTravels suffered and continues to suffer damages, including but not limited to lost clients, lost sales, lost business goodwill and reputation, and lost business opportunities.

**WHEREFORE**, MickeyTravels respectfully requests that the Court:

(A)     order Nicklas to inventory and return all of MickeyTravels' information in her possession, custody or control to MickeyTravels;

(B)     pursuant to Fla. Stat. § 501.211 enjoin and restrain Nicklas from continuing these unfair trade practices or acts which directly interfere with MickeyTravels' business;

(C)     award damages to MickeyTravels for the actual losses caused by Nicklas' unfair trade practices and acts;

(D)     grant MickeyTravels such other and further relief as this Court deems just, necessary and proper.

## <u>COUNT VII</u>

### VIOLATION OF FLORIDA'S DECEPTIVE AND
### UNFAIR TRADE PRACTICES ACT
### (AS TO MTM)

77.     MickeyTravels realleges and incorporates by reference the allegations in Paragraphs 1 through 39 above as if fully set forth herein.

78.     This is an action for damages pursuant to Chapter 501, Part II, Florida Statues ("FDUTPA").

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

79.     MTM engaged in and continues to engage in unfair methods of competition and unconscionable acts or practices with regards to MickeyTravels and its clients, including but not limited to:

(a)     Directly and improperly soliciting and diverting MickeyTravels' clients to MTM using MickeyTravels' confidential and proprietary business information, including but not limited to MickeyTravels' confidential customer list, training, sales, and marketing content; and

(b)     Intentionally and willfully interfering with MickeyTravels' advantageous business relationships and contracts by improperly using MickeyTravels' confidential and proprietary business information.

80.     As a result of MTM's violations of FDUTPA, MickeyTravels suffered and continues to suffer damages, including but not limited to lost clients, lost sales, lost business goodwill and reputation, and lost business opportunities.

**WHEREFORE**, MickeyTravels respectfully requests that the Court:

(A)     order MTM to inventory and return all of MickeyTravels' information in its possession, custody or control to MickeyTravels;

(B)     pursuant to Fla. Stat. § 501.211 enjoin and restrain MTM from continuing these unfair trade practices or acts which directly interfere with MickeyTravels' business;

(C)     award damages to MickeyTravels for the actual losses caused by MTM's unfair trade practices and acts;

(D)     grant MickeyTravels such other and further relief as this Court deems just, necessary and proper.

## COUNT VIII

## CIVIL CONSPIRACY
## (AS TO CAPPS, STOYKA, G. STOYKA, AND NICKLAS)

81.     MickeyTravels realleges and incorporates by reference the allegations in Paragraphs 1 through 39 above as if fully set forth herein.

82.     The conduct among Capps, Stoyka, G. Stoyka, and Nicklas, jointly and severally, constitutes a civil conspiracy between and among them to engage in a concerted action for an illegal, unlawful, and/or inappropriate purpose.

83.     Capps, Stoyka, G. Stoyka, and Nicklas conspired and pursued a common purpose to violate FDUTPA and Florida and Federal trade secret acts by improperly soliciting and diverting MickeyTravels' clients to MTM using MickeyTravels' trade secret and confidential and proprietary business information, including but not limited to MickeyTravels' confidential customer list, sales, marketing and training techniques and content, and by misappropriating MickeyTravels' confidential and proprietary business information as previously described.

84.     This common purpose and scheme is evidenced by (1) Capps' email from domain "hello@magictravelmakers.com" to Jackie South on December 7, 2021 indicating that she is "quietly in the process of changing companies," (2) G. Stoyka's attempt to improperly access MickeyTravels' Google Drive containing its proprietary and confidential information on December 15, 2021 using the email "Glenn@magictravelmakers.com," (3) Stoyka's resignation on December 15, 2021, (4) Stoyka informing MickeyTravels that Nicklas owns MTM and can be contacted at "hello@magictravelmakers.com," (5) Capps' resignation shortly thereafter on December 30, 2021, (6) MTM's website's Service Page copying almost verbatim from MickeyTravels' website, (7) MouseDining notification going to Capp's deactived MickeyTravels email for clients that were not booked through MickeyTravels, and (8) MTM's website indicating that Capps' mother owns and founded a Disney only travel agency for which G. Stoyka and Capps

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

are listed on the website as travel agents demonstrates that Capps, Stoyka, G. Stoyka, and Nicklas acted with malice and intent to deprive MickeyTravels of its lawful interest in its proprietary and confidential information and to cause significant financial damage to MickeyTravels.

85.     As a result of this conspiracy, MickeyTravels suffered and continues to suffer irreparable harm and damages, including but not limited to lost clients, lost sales, lost business goodwill and reputation, and lost business opportunities.

**WHEREFORE**, MickeyTravels respectfully requests that the Court:

(A)     order Capps, Stoyka, G. Stoyka, and Nicklas to inventory and return all of MickeyTravels' information in their possession, custody or control to MickeyTravels;

(B)     enjoin and restrain Capps, Stoyka, G. Stoyka, and Nicklas from directly or indirectly conspiring to solicit, sell, manage, provide, accept any request to provide, or induce the termination, cancellation or otherwise interfering in MickeyTravels' business and improperly using or attempting to use MickeyTravels' trade secret and confidential and proprietary information;

(C)     award damages to MickeyTravels for the actual losses caused by Capps, Stoyka, G. Stoyka, and Nicklas's civil conspiracy; and

(D)     grant MickeyTravels such other and further relief as this Court deems just, necessary and proper.

## COUNT IX

### VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1831 et seq.
### (AS TO ALL DEFENDANTS)

86.     MickeyTravels realleges and incorporates by reference the allegations in Paragraphs 1 through 39 above as if fully set forth herein.

27

87.     This is an action for violations of the Defend Trade Secrets Act, 18 U.S.C. §1831 et seq. ("Defendant Trade Secrets Act").

88.     The confidential and proprietary information that Capps, Stoyka, G. Stoyka, Nicklas, and MTM misappropriated and are using to solicit and divert MickeyTravels' clients are "trade secrets" as defined by 18 U.S.C. § 1839 of the Defend Trade Secrets Act. The confidential and proprietary information includes the names, addresses, contact information, and needs of MickeyTravels' clients throughout the country, training, pricing, marketing, and sales techniques. The confidential and proprietary information is used by Capps, Stoyka, G. Stoyka, Nicklas, and MTM in interstate commerce to service its clients across the country.

89.     The confidential and proprietary information is not generally known or readily accessible, through proper means, to others who can profit from its use, and it is not readily available to the public or MickeyTravels' competitors. MickeyTravels' spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which is of great value to any competitor.

90.     MickeyTravels took reasonable efforts to maintain the secrecy of the confidential and proprietary information including utilizing agreements such as the agreements executed by Capps and Stoyka, safeguarding and restricting its access and through use of contractual restrictions, passwords and logins, and limiting disclosure and use of such information..

91.     The confidential and proprietary information contains business data from which MickeyTravels derives independent economic value, actual or potential, from not being generally known to MickeyTravels' competitors, and not being readily ascertainable by proper means by persons who can obtain economic value from its disclosure or use.

92.     Based upon the foregoing, Capps, Stoyka, G. Stoyka, Nicklas, and MTM violated the Defendant Trade Secrets Act by misappropriating the confidential and proprietary information, as that term is defined by 18 U.S.C. § 1839(5), and, upon information and belief, are improperly using the misappropriated trade secret information to solicit and divert customers from MickeyTravels to MTM.

93.     The foregoing conduct constitutes a misappropriation and misuse of MickeyTravels' trade secret information in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq.

94.     The misappropriation of MickeyTravels' confidential and proprietary information has caused MickeyTravels irreparable injury for which monetary damages alone are inadequate to remedy.

**WHEREFORE**, MickeyTravels respectfully requests that the Court:

(A)     order Capps, Stoyka, G. Stoyka, Nicklas, and MTM to inventory and return all of MickeyTravels' information in their possession, custody or control to MickeyTravels;

(B)     pursuant to 18 U.S.C. § 1836(b)(3)(A) enjoin and restrain Capps, Stoyka, G. Stoyka, Nicklas, and MTM from continuing to use MickeyTravels' misappropriated trade secret information;

(C)     award damages to MickeyTravels for the actual losses caused by Capps, Stoyka, G. Stoyka, Nicklas, and MTM's misappropriation; and

(D)     grant MickeyTravels such other and further relief as this Court deems just, necessary and proper.

## COUNT X

### VIOLATION OF FLORIDA'S UNIFORM TRADE SECRETS ACT
### (AS TO ALL DEFENDANTS)

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

95.    MickeyTravels realleges and incorporates by reference the allegations in Paragraphs 1 through 39 above as if fully set forth herein.

96.    This is a claim against Defendants for violation of Florida's Uniform Trade Secrets Act Fl. Stat. § 688, et seq. and, in particular for violation of § 688.002.

97.    The confidential and proprietary information stored in MickeyTravels' Google Drive and servers and accessed by Capps, Stoyka and G. Stoyka, including MickeyTravels' client list, training, marketing, and sales techniques constitute trade secrets in that they (1) constitute information that derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use and (2) have been the subject of reasonable efforts to maintain their secrecy. Capps, Stoiyka, G. Stoyka, Nicklas, and MTM are using this misappropriated trade secret and confidential and proprietary information to solicit and divert clients from MickeyTravels to MTM.

98.    Defendants were fully aware of the confidential and trade secret nature of the confidential and proprietary information contained in MickeyTravels' Google Drive and servers including MickeyTravels' client list, training, marketing, sales techniques, and other proprietary information.

99.    Pursuant to Capps Contract and Stoyka Contract, Capps and Stoyka had a duty to maintain the secrecy of MickeyTravels' trade secrets and G. Stoyka, Nicklas, and MTM had a common law duty to maintain the secrecy of same as well.

100.    Defendants' deliberate and intentional actions in (1) improperly accessing MickeyTravels' trade secret information, and thereafter (2) using MickeyTravels' trade secret information constitutes trade secret misappropriation.

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

101.    Defendants' actions are the direct and proximate cause of damages to MickeyTravels.

102.    As a direct and proximate cause of MickeyTravels' trade secret misappropriation, Defendants have been unjustly enriched in an amount equal to the amount of business lost by MickeyTravels.

103.    Further, Defendants' trade secret misappropriation has caused and will continue to cause MickeyTravels irreparable harm including, but not limited to, loss of clients and goodwill.

104.    MickeyTravels lacks an adequate remedy at law, and the interest of the public would be well-served by the entry of an injunction.

105.    As a result of Defendants' acts and omissions, MickeyTravels is entitled to recover its damages, to the extent ascertainable.

106.    MickeyTravels seeks temporary and permanent injunctive relief, pursuant to section 688.003, Fla. Stat.

107.    MickeyTravels also seeks exemplary damages pursuant to section 688.004, Fla. Stat. and attorneys' fees, pursuant to section 688.005, Fla. Stat. because Defendants willfully and maliciously misappropriated MickeyTravels' trade secrets.

**WHEREFORE**, MickeyTravels respectfully requests that the Court:

(A)    order Capps, Stoyka, G. Stoyka, Nicklas, and MTM to inventory and return all of MickeyTravels' information in their possession, custody or control to MickeyTravels;

(B)    pursuant to Florida Statute § 688.003, enjoin and restrain Capps, Stoyka, G. Stoyka, Nicklas, and MTM from continuing to use MickeyTravels' misappropriated trade secrets.

(C)    award damages to MickeyTravels for the actual losses caused by Capps, Stoyka, G. Stoyka, Nicklas, and MTM's misappropriation; and

FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077

(D)    grant MickeyTravels such other and further relief as this Court deems just, necessary and

proper.

## COUNT XI

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
### (AS TO NICKLAS, G. STOYKA, AND MTM)

108.    MickeyTravels realleges and incorporates by reference the allegations in

Paragraphs 1 through 39 above as if fully set forth herein.

109.    A business relationship exists between MickeyTravels and its various clients.

110.    Nicklas, G. Stoyka, and MTM have knowledge of the business relationships

between MickeyTravels and its various clients because Nicklas' daughter, Capps, worked for

MickeyTravels for almost two (2) years, G. Stoyka's wife, Stoyka, worked for MickeyTravels for

almost one (1) year, and MTM was founded by Capps' mother Nicklas therefore Nicklas, G.

Stoyka, and MTM (imputing knowledge through the alleged founder and owner Nicklas) have

knowledge of the business relationships that existed between MickeyTravels and its various

clients.

111.    Nicklas, G. Stoyka, and MTM intentionally and unjustifiably interfered with

MickeyTravels business relationships with its various clients by using MickeyTravels' trade

secrets and confidential and proprietary information to solicit and divert MickeyTravels' clients

on behalf of MTM.

112.    Nicklas, G. Stoyka, and MTM do not have any justification or privilege for

interfering with MickeyTravels' business relationships with its clients.

113.    MickeyTravels has suffered, and will continue to, suffer damages as a direct and

proximate result of Nicklas, G. Stoyka, and MTM's interference with its business relationships in

the form of loss of clients and goodwill.

32

114.    As a result of Nicklas, G. Stoyka, and MTM's acts and omissions, MickeyTravels is entitled to recover damages to the extent ascertainable.

115.    To the extent damages are not ascertainable MickeyTravels lacks an adequate remedy at law and Nicklas, G. Stoyka, and MTM's actual tortious interference has caused and will continue to cause MickeyTravels irreparable harm including, but not limited to, loss of customers and goodwill.

116.    The interest of the public would be well-served by entry of an injunction.

**WHEREFORE**, MickeyTravels respectfully requests that the Court:

(A)    order Nicklas, G. Stoyka, and MTM to inventory and return all of MickeyTravels' information in their possession, custody or control to MickeyTravels;

(B)    enjoin and restrain Nicklas, G. Stoyka, and MTM from continuing to interfere with MickeyTravels' business relationships;

(C)    award damages to MickeyTravels for the actual losses caused by Nicklas, G. Stoyka, and MTM tortious interference; and

(D)    grant MickeyTravels such other and further relief as this Court deems just, necessary and proper.

## NOTICE CONCERNING PUNITIVE DAMAGES
## UNDER FLORIDA STATUTE SECTION 768.72

MickeyTravels hereby seeks leave to amend this Complaint to add a claim for punitive damages to Counts VIII-XI upon a reasonable showing by evidence in the record or proffered by MickeyTravels which would provide a reasonable basis for recovery of such damages.

## DEMAND FOR JURY TRIAL

**FOREMAN FRIEDMAN, PA, 2 South Biscayne Boulevard, Miami, FL 33131 Tel: 305-358-6555 / Fax: 305-374-9077**

MickeyTravels hereby demands a trial by jury on all issues so triable as it pertains to its Complaint.

Dated: February 23, 2022

Respectfully submitted,

By: */s/ Catherine J. MacIvor*
    Catherine J. MacIvor, Esq. (FBN 932711)
    cmacivor@fflegal.com
    Deanna M. Santo, Esq. (FBN 1025686)
    dsanto@fflegal.com
    FOREMAN FRIEDMAN, PA
    One Biscayne Tower, Suite 2300
    2 South Biscayne Boulevard
    Miami, FL 33131
    Tel: 305-358-6555/ Fax: 305-374-9077
    *Counsel for MickeyTravels, LLC*